IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marilyn Delgado, :
                Petitioner :
                                 :
        v. :
                                   :
Unemployment Compensation :
Board of Review, : No. 1374 C.D. 2025
                Respondent : Submitted: June 16, 2026

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                FILED: August 12, 2026

Marilyn Delgado (Claimant), *pro se*, petitions for review of the September 17, 2025 order of the Unemployment Compensation Board of Review (Board). The Board affirmed a referee's decision finding Claimant ineligible for benefits under section 402(e) of the Unemployment Compensation Law (Law),[1] which provides that a claimant shall be ineligible for benefits in any week in which her unemployment is due to willful misconduct connected with her work. We affirm.

## I. Background

Claimant worked for UPMC Pinnacle (Employer) as a scheduling specialist associate from April 2021 to February 2025. *See* Appeals Referee Decision dated June 18, 2025 (Referee's Decision) at 2, Findings of Fact (F.F.) 1 & 9, Certified Record (C.R.) at 231. Employer maintains a Corrective Action and

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Discharge Policy (Policy) which provides that employees who are absent three consecutive workdays without notifying their supervisor will be considered to have abandoned their employment and will be processed as having voluntarily terminated their employment for job abandonment. *See* Referee's Decision at 2, F.F. 2, C.R. at 231. Specifically, Section 7 of the Policy, entitled Job Abandonment, reads:

> **VII. Job Abandonment**
>
> A staff member who is absent for three consecutive scheduled workdays without notifying his or her supervisor is considered to have abandoned his or her job. The supervisor will process the staff member as having voluntarily terminated for job abandonment. The manager or Human Resources representative or designee will provide a termination letter to the staff member. If the staff member later produces an explanation, that in the sole judgment of [Employer] represents a "good cause" for this absence, the department head and the Human Resources director or designee may consider reinstatement of employment.

Policy at 8, C.R. at 224. Claimant was aware of the Policy and had been warned of the consequences for violation of the Policy contained therein. *See* Referee's Decision at 2, F.F. 3, C.R. at 231.

On February 17, 2025, Claimant returned to work from previously approved leave under the Family and Medical Leave Act (FMLA).[2] *See* Referee's Decision at 2, F.F. 4, C.R. at 231. Upon her return, Claimant worked February 17, 2025, and February 18, 2025. *See* Referee's Decision at 2, F.F. 5, C.R. at 231. Claimant reported for work on February 19, 2025, but left work early, without supervisor notification or approval. *See* Referee's Decision at 2, F.F. 7, C.R. at 231.

---

[2] 29 U.S.C. §§ 2601-2654.

2

Claimant then failed to either report to or call off from work on February 20, 2025, and February 21, 2025. *See* Referee's Decision at 2, F.F. 8, C.R. at 231. On February 27, 2025, Employer terminated Claimant's employment for violation of Section 7 of the Policy because she failed to properly report off work for three consecutive days. *See* Referee's Decision at 2, F.F. 9, C.R. at 231.

On February 20, 2025, Claimant applied for unemployment compensation (UC) benefits, for which the UC Service Center deemed her eligible. *See* Claim Information, C.R. at 3-21; *see also* Qualifying Separation Determination at 1, C.R. at 40; Referee's Decision at 1, C.R. at 230. Employer appealed the UC Service Center's eligibility determination. *See* Employer's Appeal from Determination, C.R. at 55-59. A referee conducted a hearing on the matter on June 10, 2025, at which both parties appeared and testified. *See* Transcript of Testimony from Referee's Hearing (Transcript), C.R. at 99-128; Hearing Exhibits, C.R. at 129-228.

At the hearing, Employer presented one witness and documentary evidence. *See generally* Transcript; Hearing Exhibits. Claimant appeared *pro se* and testified on her own behalf. *See id.* Transcript at 19-27, C.R. at 118-26. Based on the testimony and the documentary evidence presented, the referee determined that Claimant was terminated for violation of Employer's policies and that she did not establish good cause for her conduct. *See* Referee's Decision at 3, C.R. at 232. Therefore, the referee concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Law for willful misconduct and reversed the determination of the UC Service Center. *See id.*

Claimant appealed to the Board, which affirmed the Referee's Decision by Order filed September 17, 2025. *See* Appeal from Referee's Decision, C.R. at

3

243-45; *see also* Unemployment Compensation Board of Review Order dated September 17, 2025 (Board Order) at 1, C.R. at 255. Claimant requested reconsideration of the Board Order, which request the Board denied. *See* Request to Reconsider Appeal filed September 30, 2025, C.R. at 277; Acknowledgement of Request for Reconsideration mailed October 1, 2025, C.R. at 279; Board's Order Denying Request for Reconsideration mailed October 15, 2025, C.R. at 281-88. Claimant then petitioned this Court for review.[3]

## II. Issues

To the extent her arguments can be discerned, Claimant contends that the Board erred by affirming the Referee's Decision determining that Claimant was ineligible for UC benefits. *See* Claimant's Brief at 6-7 (pagination supplied). Specifically, Claimant claims that she did not violate the Policy because she provided written notification to Employer regarding her no-show/no-call dates and alleges instead that she was constructively discharged from her employment by Employer. *See* Claimant's Br. at 6-7. Employer disputes these claims. Claimant is not entitled to relief.

## III. Discussion

Initially, we note that

> the Board, not the referee, is the ultimate fact finding body and arbiter of credibility in UC cases. Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the Board and are not subject to

---

[3] This Court's review is limited to a determination of whether substantial evidence supported necessary findings of fact, whether errors of law were committed, or whether constitutional rights were violated. *See Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014). As the prevailing party below, Employer is entitled to the benefit of all reasonable inferences drawn from the evidence on review. *See Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

4

re-evaluation on judicial review. The Board . . . may reject even uncontradicted testimony if it is deemed not credible or worthy of belief. We are bound by the Board's findings so long as there is substantial evidence in the record, taken as a whole, supporting those findings.

*Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1227-28 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted).

Section 402(e) of the Law provides that an employee will be ineligible for UC benefits for any week in which "[her] unemployment is due to [her] discharge or temporary suspension from work for willful misconduct connected with [her] work[.]" 43 P.S. § 802(e). The question of whether an employee's actions constitute willful misconduct is a question of law subject to review by this Court. *See Reading Area Water Auth. v. Unemployment Comp. Bd. of Rev.*, 137 A.3d 658, 661 (Pa. Cmwlth. 2016).

For purposes of determining a discharged employee's eligibility for unemployment compensation, the employer bears the burden of proving that the employee engaged in willful misconduct connected with her work. *See* Section 402(e) of the Law, 43 P.S. § 802(e); *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). This Court has defined willful misconduct as

(1) wanton and willful disregard of an employer's interests; (2) deliberate violation of [an employer's] rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations.

*Waverly Heights*, 173 A.3d at 1228 (quoting *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014)). Once the employer establishes a

*prima facie* case of willful misconduct, the burden shifts to the claimant to prove good cause for her actions. *See Downey v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 351, 353 (Pa. Cmwlth. 2006).

"Where an employer seeks to deny UC benefits based on a work[]rule violation, the employer must prove the existence of a work rule, the reasonableness of the rule and the employee's violation of the rule." *Waverly Heights*, 173 A.3d at 1228 (internal citation omitted). An inadvertent or negligent violation of an employer's rule may or may not constitute willful misconduct. *See Chester Cmty. Charter Sch. v. Unemployment Comp. Bd. of Rev.*, 138 A.3d 50, 55 (Pa. Cmwlth. 2016). "Thus, a determination of what amounts to willful misconduct requires a consideration of all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives." *Eshbach v. Unemployment Comp. Bd. of Rev.*, 855 A.2d 943, 947-48 (Pa. Cmwlth. 2004) (internal quotation marks and citation omitted). Where the employee's action is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct. *See id.* at 948.

Absenteeism without good cause in violation of an employer's policy may constitute willful misconduct justifying a denial of UC benefits. *See Owens v. Unemployment Comp. Bd. of Rev.*, 748 A.2d 794, 799 (Pa. Cmwlth. 2000). This is so because "[e]mployers have the right to expect that employees will attend work when they are scheduled, that they will be on time, and that they will not leave work early without permission." *Grand Sport Auto Body v. Unemployment Comp. Bd. of Rev.*, 55 A.3d 186, 190 (Pa. Cmwlth. 2012) (internal citation, quotation marks, and ellipses omitted). Thus, an employee's failure to comply with company procedures[4]

---

[4] This Court has explained that "[a]n employer may notify its employees of its interests and the standards of behavior it expects by promulgating rules. By doing so, it indicates what it would

6

for absence can provide a basis for denial of UC benefits. *See, e.g.*, *Owens*, 748 A.2d at 799 (failure to provide medical documentation within allotted time period). Additionally, this Court has "held repeatedly that the failure of an employee to report the reason for his or her absences from work in a proper manner pursuant to company policy constitutes a deliberate disregard of the standards an employer can rightfully expect of an employee, *i.e.*, willful misconduct." *Penn Photomounts, Inc. v. Unemployment Comp. Bd. of Rev.*, 417 A.2d 1311, 1312 (Pa. Cmwlth. 1980); *see also Azar v. Unemployment Comp. Bd. of Rev.*, 382 A.2d 995, 996 (Pa. Cmwlth. 1978) ("Failure to report the reason for an absence in the proper manner under company policy . . . can constitute willful misconduct . . . pursuant to Section 402(e) of the Law since such behavior constitutes a deliberate disregard of the standards of behavior an employer can rightfully expect of an employee.").

At the hearing before the referee in this matter, the Policy and a termination letter dated February 27, 2025 (Termination Letter), were entered into evidence without objection. *See* Transcript at 12, C.R. at 111. The Policy outlines Employer's corrective action and discharge procedures, including the job abandonment definition and consequences included in Section 7. *See* Policy at 1-9, C.R. at 217-25. The Termination Letter indicates that Claimant had voluntarily resigned by virtue of having not presented for work without notification to Employer for three consecutive scheduled work shifts on February 19 through February 21, 2025. *See* Termination Letter at 1 (pagination supplied), C.R. at 226.

Additionally, Abigail Leubin, a human resources generalist with Employer, testified before the referee at the hearing. *See* Transcript at 13-19 & 27-

---

consider to be willful misconduct." *Brady v. Unemployment Comp. Bd. of Rev.*, 544 A.2d 1085, 1086 (Pa. Cmwlth. 1988).

7

28, C.R. at 112-18 & 126-27. Ms. Leubin explained that an employee's failure to report for three consecutive scheduled shifts is a violation of the Policy's Job Abandonment Section 7, which will result in termination. *See* Transcript at 14 & 15, C.R. at 113 & 114. Ms. Leubin testified that the Policy applied to Claimant, that Claimant knew about the Policy, and that Claimant had access to review the Policy on Employer's InfoNet.[5] *See* Transcript at 15 & 16, C.R. at 114 & 115. Ms. Leubin further testified that Claimant's FMLA leave ended on February 17, 2025. *See* Transcript at 18, C.R. at 117. Ms. Leubin explained that, after working February 17, 2025, and February 18, 2025, Claimant did not show up for three consecutive work days – February 19, 2025 (when she left mid-shift without notifying her superior), February 20, 2025, and February 21, 2025 – and failed to provide any excuse for her absences to her superior as required by the Policy. *See* Transcript at 14-15, 18 & 19 C.R. at 113-14, 117 & 118. Ms. Leubin noted that Claimant was scheduled, and knew she was scheduled, to work all three days. *See* Transcript at 14-15, C.R. at 113-14. Further, Ms. Leubin explained that, while Employer recognizes FMLA leave and other types of personal leave, Claimant's absences on February 19 through 21 of 2025 were standard, unprotected shifts and not any type of protected leave. *See* Transcript at 16 & 18, C.R. at 115 & 117. Further, Ms. Leubin noted that, even had the days in question been covered by some kind of leave, Claimant would still have been required to comply with Employer's call-off procedures. *See* Transcript at 17, C.R. at 116.

---

[5] Of InfoNet, Ms. Leubin explained: "InfoNet is a resource for all [Employer's] employees to navigate, kind of like a Google on their end[, and] search anything they can regarding [Employer's] policies. Each policy at [Employer] is listed on there for all employees to view." *See* Transcript at 15, C.R. at 114.

8

Claimant also testified on her own behalf before the referee. *See* Transcript at 19-27, C.R. at 118-26. Claimant explained that she returned to work on February 17, 2025, following the expiration of a period of approved FMLA leave related to bereavement following the death of her mother. *See* Transcript at 20-21, C.R. at 119-20. Claimant explained that she worked on February 18, 2025, and February 19, 2025. *See* Transcript at 21 & 24, C.R. at 120 & 124. Claimant conceded that she left work on February 19, 2025, and explained that she did not call as required when she left because she did not want to speak or deal with her superior. *See* Transcript at 23, C.R. at 122. Claimant claimed to have called and left a voice message on an Employer system regarding her absence on February 19, 2025. *See* Transcript at 23 & 24, C.R. at 122 & 123. Claimant conceded that she did not follow Employer's call-off procedure for her absences on February 20, 2025, and February 21, 2025, despite understanding that Employer considered such actions as a no-call, no-show. *See* Transcript at 13, 19-20 & 23-27, C.R. at 112, 118-19 & 122-26. Claimant explained instead that she had "involuntarily quit" as a result of a "hostile environment." Transcript at 13, 19-20 & 23-27, C.R. at 112, 118-19 & 122-26. Claimant also made repeated unspecified allegations regarding a purported invasion of privacy perpetrated upon her by Employer.[6] *See* Transcript at 13, 19-20 & 26, C.R. at 112, 118-19 & 125.

Based on this testimony and the documentary evidence presented, the referee made the following findings of fact:

---

[6] Claimant provided no specifics or evidence of the alleged invasion of privacy beyond stating: "Listening in on my private life while I'm off calls. That's invasion of privacy." Transcript at 26, C.R. at 125.

1. [Claimant] was employed full time by [Employer] as a scheduling specialist associate, beginning April 19, 2021, at a final rate of pay of $19.98 per hour.

2. [E]mployer has a policy that establishes staff must adhere to the Corrective Action and Discharge Policy regarding attendance.

3. [Claimant] was aware of the [P]olicy and was warned in accordance with the progressive discipline policy.

4. [Claimant] had been approved for FMLA that ended on February 17, 2025.

5. [Claimant] reported for work on February 17, 2025, and February 18, 2025.

6. [Claimant] was notified that if an additional personal leave of absence was approved, she must still follow her department's time and attendance policy, which requires supervisor notification.

7. [Claimant] reported to work on February 19, 2025, but left work early, without supervisor approval.

8. [Claimant] failed to report to work or report off work on February 20, 2025, and February 21, 2025.

9. [Claimant] was terminated effective February 27, 2025, for violating [E]mployer's Corrective Action and Discharge Policy regarding failing to properly report off work for three consecutive days.

Referee's Decision at 2, C.R. at 231. Based on these facts, the referee determined:

In the present case, [E]mployer discharged [C]laimant for violation of [E]mployer's Corrective Action and Discharge Policy. [C]laimant failed to follow the [P]olicy regarding reporting off from work. [C]laimant had been

10

warned through a progressive discipline policy, including verbal and written warnings. The [E]mployer['s] witness testified the final incident of not reporting off on February 19, 2025, through February 21, 2025, as required, resulted in [C]laimant's termination. She testified that [C]laimant was required to report her absence, even if she had been approved for FMLA or an extended personal leave. Therefore, [C]laimant deliberately violated [E]mployer's [P]olicy and disregarded the standards of behavior [E]mployer has a right to expect of [an] employee. The burden then shifts to [C]laimant to show good cause for her conduct.

[C]laimant testified that she felt [E]mployer was retaliating for filing FMLA and bereavement leave after her mother's death and made allegations of invasion of privacy against [E]mployer. She acknowledged that she did not report off on February 20, 2025, or February 21, 2025, and left early on February 19, 2025, without permission. [C]laimant was aware she was on a final warning and any further violations of [E]mployer's [P]olicy would result in her termination. She violated the [P]olicy by failing to report her absence. [E]mployer terminated [C]laimant effective February 27, 2025, due to [P]olicy violation. Accordingly, [C]laimant has not established good cause for her conduct and benefits are denied pursuant to Section 402(e) of the Law.

Referee's Decision at 3, C.R. at 232.

The Board, in turn, adopted and incorporated the referee's findings of fact and conclusions of law. *See* Board Order at 1, C.R. at 255. The Board further explained:

In this matter, [C]laimant and [E]mployer offered conflicting testimony regarding the nature of [C]laimant's separation. The Board resolves the conflict in testimony in favor of [E]mployer. In this matter, [E]mployer had a policy that three no-call/no-show absences was grounds

11

for termination. [C]laimant left work without notifying her supervisor and then failed to call-off the following two days of work. [C]laimant's assertion that she was "forced to resign," is without merit and [C]laimant failed to show that she had good cause for her failure to follow [E]mployer's [P]olicy regarding reporting absences.

Board Order at 1, C.R. at 255.

We find no error in the Board's determination. Based on this record, we conclude that substantial evidence existed to support the Board's necessary findings of fact that Employer met its burden of proving that Claimant was terminated for willful misconduct by violating a known company policy. The evidence in this matter illustrates that Employer maintained the Policy and that Claimant was aware of the Policy. Further, the evidence illustrates that Claimant violated the Policy by leaving without notification/permission or not showing up without notification for three consecutive scheduled shifts. Claimant's failure to comply with the Policy, as a deliberate disregard of the standards Employer could rightfully expect of its employees, constituted willful misconduct justifying a denial of UC benefits. *See Owens*; *Penn Photomounts*. The record contains no evidence, beyond Claimant's unsupported testimony, that Claimant communicated to Employer any notice or excuse pertaining to her absences on February 19, 2025, February 20, 2025, or February 21, 2025. Further, the Board, as finder of fact, found Claimant's explanations for her conduct and suggestion that she was forced to involuntarily quit her employment to be without merit;[7] therefore, the Board found

_____

[7] We observe that, even if this case were to be analyzed as a voluntary quit situation as opposed to a termination for willful misconduct, the record would still support the Board's determination. Section 402(b) of the Law provides that an employee will be ineligible for UC benefits for any week "[i]n which [her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature[.]" 43 P.S. § 802(b). An employee voluntarily

12

that Claimant had failed to show good cause for her actions. *See* Board Order at 1, C.R. at 255. We are bound by this determination. *See Waverly Height*s, 173 A.3d at 1228. Accordingly, we affirm the Board Order that affirmed the Referee's

terminates employment when she resigns, leaves, or quits the employment without action by the employer. *Roberts v. Unemployment Comp. Bd. of Rev.*, 432 A.2d 646, 648 (Pa. Cmwlth. 1981). However, a claimant who voluntarily quits her employment may still be eligible for UC benefits if she voluntarily quits for cause of a necessitous and compelling nature. *See* 43 P.S. § 802(b). However, "[a] claimant who voluntarily quits [her] employment bears the burden of proving that necessitous and compelling reasons motivated that decision." *Hohl v. Unemployment Comp. Bd. of Rev.*, 261 A.3d 622, 627 (Pa. Cmwlth. 2021) (citation and internal quotation marks omitted); *see also Solar Innovations, Inc. v. Unemployment Comp. Bd. of Rev.*, 38 A.3d 1051, 1056 (Pa. Cmwlth. 2012) ("A claimant who voluntarily terminates [her] employment has the burden of proving that a necessitous and compelling cause existed."). A claimant who asserts that she has left her employment for a necessitous and compelling reason must prove: "(1) the existence of circumstances that created real and substantial pressure to leave employment; (2) that such circumstances would compel a reasonable person to leave employment; (3) that [s]he acted with ordinary common sense; and (4) that [s]he made a reasonable attempt to continue [her] employment." *Hohl*, 261 A.3d at 627; *see also Brunswick Hotel & Conf. Ctr., LLC v. Unemployment Comp. Bd. of Rev.,* 906 A.2d 657, 660 (Pa. Cmwlth. 2006). "Personality conflicts, absent an intolerable work atmosphere, do not amount to a necessitous and compelling cause for leaving one's employment." *Wert v. Unemployment Comp. Bd. of Rev.*, 41 A.3d 937, 940 (Pa. Cmwlth. 2012). Likewise, it is well settled that "[a] disagreement with an employer's policies or dissatisfaction with working conditions centered on differences with an employer's management style is not a compelling enough cause to voluntarily quit one's job." *Gioia v. Unemployment Comp. Bd. of Rev.*, 661 A.2d 34, 37 (Pa. Cmwlth. 1995). Additionally, "[w]here [a] claimant has failed to take all necessary and reasonable steps to preserve the employment relationship, [s]he cannot demonstrate a necessitous and compelling reason for leaving [her] job and is ineligible for benefits." *Hohl*, 261 A.3d at 627; *see also Stiffler v. Unemployment Comp. Bd. of Rev.*, 438 A.2d 1058, 1060 (Pa. Cmwlth. 1982). "In essence, a claimant who willingly resigns from [her] job must show that [s]he had no real choice but to leave." *Stiffler*, 438 A.2d at 1060. Claimant's statement that she had "involuntarily quit" as a result of a "hostile environment," and her unspecified allegations about purported, unspecified invasions of privacy, fall short of meeting her burden of proving a cause of a necessitous and compelling nature for leaving work.

Decision that determined that Claimant was ineligible for UC benefits under section 402(e) of the Law.[8]

## IV. Conclusion

For the foregoing reasons, we affirm the Board Order.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[8] To the extent Claimant argues inconsistent enforcement of the Policy, *see* Claimant's Brief at 7 (alleging that Employer put forth "[n]o evidence others were fired or suspended"), and/or seeks the vacation of an overpayment determination, *see* Claimant's Brief at 6-7, we note that Claimant did not raise these issues before the referee and they are accordingly waived. *See generally* Transcript; *see also* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). We further observe that neither the Referee's Decision nor the Board Order addressed overpayment of UC benefits. *See generally* Referee's Decision & Board Order.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marilyn Delgado,                          :
                Petitioner          :
                                 :
          v.                         :
                                 :
Unemployment Compensation                 :
Board of Review,                          :     No. 1374 C.D. 2025
                Respondent         :

## **O R D E R**

AND NOW, this 12th day of August, 2026, the September 17, 2025 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge